ERNESTO ARZOLA MALDONADO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. CI-65-3.        Decided June 24, 1965.

*Miguel A. Román* for petitioner. *Donald R. Dexter, Miguel A. Guzmán Soto* and *G. Méndez Muñoz* for the Manager of the State Insurance Fund.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Petitioner worked as adjuster of the Universal C. I. T. Credit Corporation. He suffered an infarct of the posterior myocardium on February 14, 1964. It was determined that causal relation existed due to aggravation of his arteriosclerotic disease. The special medical report signed by Dr. Silvia Santiago established that "the patient suffers from arteriosclerotic hypertensive organic disease of the heart. He develops dyspnea and precordial pain when he walks a block on level ground, when he goes up 5–6 steps or when engaged in some activities of everyday life. Recreation and emotional stress also cause symptoms." Dr. Ramos Lugo, who reported

as to the fixing of disability, states that "Examinations practiced by cardiologists reveal that the injured party suffered infarct of the myocardium which can be caused by the tasks he performs in his work. At the present time the patient suffers from hypertension and arteriosclerosis with spells of dyspnea and precordial pain to a minimum effort. BP. 150/80. Enlarged heart. According to Dr. Santiago's opinion the injured party merits a disability of 66 2/3% of the general physiological functions."

The Fund awarded a permanent partial disability equal to the loss of 66 2/3% of the general physiological functions. In these cases the law provides that a sum greater than six thousand dollars shall not be paid. 11 L.P.R.A. § 3 (Supp. 1964 at p. 2).[1] Feeling aggrieved he appealed to the Industrial Commission.

After holding a hearing and listening to experts, the Industrial Commission decided to increase the disability to the loss of 85% of the general physiological functions and ordered the Manager of the State Insurance Fund to pay the injured party the corresponding compensation in the manner provided by law.

Petitioner requested then the Commission to include in its decision a determination to the effect that "the loss of 85% of the general physiological functions . . . is equivalent to a total permanent disability." He invoked our decision in

---

[1] Section 3 provides, in its pertinent part, the following:

"Permanent partial disability shall be considered to be the loss of one foot or leg, one hand, one arm, one eye, one or more fingers or toes, and any ankylosis, fracture, or dislocation when ligaments have been torn and where restoration is not complete. For the permanent partial disabilities specified below, the injured workman or employee shall receive additional compensation consisting of sixty-six and two-thirds (66⅔) percent of the wages which were received, or, but for such accident, would have been received by him on the day of the accident, for the number of weeks specified in the following table; Provided, That in no case shall there be paid to the workman or employee more than thirty-five (35) dollars, or less than eight (8) dollars a week. And provided, further, that in no case shall a sum greater than six thousand (6,000) dollars be paid."

*Rodríguez Ortiz* v. *Industrial Commission,* 90 P.R.R. 744 (1964).

In the decision rendered on the previous motion, the Commission points out that "after a public hearing we granted this laborer a disability equivalent to the loss of 85% of the physiological functions, and having studied again the evidence in the record and there being nothing to change the criterion held by us in rendering our aforementioned decision, we decided to *Deny* the reconsideration requested."

We agreed to review the Commission's action. It should be modified.

■ In *Rodríguez Ortiz* v. *Industrial Commission, supra,* we made an extensive study of the problem raised ·in the present appeal. We made reference to the provision of the Workmen's Accident Compensation Act, which establishes that "Such injuries as result in the total and permanent disability of the workman or employee to engage in any kind of remunerative work or occupations, shall be considered total disability." 11 L.P.R.A. § 3. We stated then that in order to determine whether a worker or employee is totally disabled, the following should be considered: "(1) the worker's physical impediment and its extent, measured and expressed from the medical point of view in terms of the loss of the general physiological function, and (2) the effect of said physical impediment on the ability of the laborer or worker to perform a gainful employment."

■ Having adduced the foregoing, we turn to study the manner in which provisions similar to ours were applied in other jurisdictions. We conclude that "according to the authorities and the doctrine generally accepted, the fundamental test to decide whether a worker is totally incapacitated is his ability, after the injury or accident, to work continuously at a gainful occupation."

With this rule in mind, let us examine the evidence that the Industrial Commission had under its consideration.

Three doctors testified before the Commission. Dr. Leonardo Méndez, introduced by petitioner, testified:

"He is almost totally disabled. The only thing he could do, in my opinion, is to perform completely sedentary work at home, anything involving physical effort or walking more than half a block would be injurious to his health."

Petitioner presented also Dr. José Rullán, specialist in internal medicine and cardiology. He stated that:

"I do not believe he is actually able to perform remunerative work based on a salary. I do not believe he can work on a fixed full four or eight-hour schedule."
To the question of whether he believed that petitioner could not perform any kind of work, he answered:

"I believe that now he cannot perform any kind of work where he would be compelled by his employer to work on a fixed schedule from 8:00 to 12:00 and from 1:00 to 5:00 p.m., where physical effort is involved and where he would have to walk, he is not in a condition to do so."

Dr. Mario Calcagno, medical expert of the Fund, stated that:

"We have listened to the allegations of the two expert cardiologists, Dr. Méndez and Dr. Rullán, and we believe that this worker's disability can be increased to 80% of the general physiological functions."

Dr. H. Vázquez Milán, Medical Director of the Industrial Commission, stated the following:

"Mr. Commissioner, the injury suffered by this laborer of a severe and symptomatic nature, anginose type, disables him for any kind of work. Due to his limitations, in a medical hearing Dr. De Juan considered that the disability could be increased up to 85% of the general physiological functions."

■ With this evidence before it the Industrial Commission modified the Fund's determination increasing the

disability. from 66 2/3% to 85%. But that evidence required another determination. Although the deponents did not express it directly, their testimonies clearly established that the worker lacks capacity to engage in any occupation which brings him an income in a regular and steady way.

Therefore, the decision rendered by the Industrial Commission will be modified in the sense that it will state that petitioner is totally permanently disabled.